1    WO

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9    Bevin Lybarger,                      No. CV-20-0030-TUC-LCK

10                   Plaintiff,            **ORDER**

11   v.

12   Andrew Saul,

13                   Defendant.

14

15        Plaintiff Bevin Lybarger filed this action pursuant to 42 U.S.C. § 405(g) seeking

16   judicial review of a final decision by the Commissioner of Social Security (Commissioner).

17   (Doc. 1.) Before the Court are Lybarger's Opening Brief, Defendant's Responsive Brief,

18   and Lybarger's Reply. (Docs. 18, 22, 23.) The parties have consented to Magistrate Judge

19   jurisdiction. (Doc. 13.) Based on the pleadings and the Administrative Record, the Court

20   remands this matter for further proceedings.

21                  **FACTUAL AND PROCEDURAL HISTORY**

22        Lybarger was born in June 1973, making her 41 years of age at the onset date of her

23   alleged disability. (Administrative Record (AR) 199.) Lybarger had prior work as a cable

24   installer and truck driver. (AR 36-38, 182.) She filed an application for Disability Insurance

25   Benefits (DIB) in July 2016, alleging disability from March 2, 2015. (AR 155.) Lybarger's

26   application was denied upon initial review (AR 60-72) and on reconsideration (AR 73-89).

27        A hearing was held on July 5, 2018 (AR 32-59), after which the ALJ found that

28   Lybarger was not disabled (AR 13-25). The ALJ determined Lybarger had severe

1  impairments of PTSD, gastrointestinal disorder, insomnia, and obesity coupled with
2  lumbar spondylosis. (AR 15.) The ALJ concluded Lybarger had the Residual Functional
3  Capacity (RFC) to perform work at the medium exertional level but limited to no
4  concentrated exposure to hazards, unskilled, and "no more than brief, superficial, and
5  intermittent contact with coworkers, supervisors, the general public, and customers." (AR
6  18.) The ALJ concluded at Step Five, based on the testimony of a vocational expert (VE),
7  that Lybarger could perform work that exists in significant numbers in the national
8  economy. (AR 24-25.) The Appeals Council denied review of the ALJ's decision. (AR 1.)

9                              **STANDARD OF REVIEW**

10      The Commissioner employs a five-step sequential process to evaluate DIB claims.
11  20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To
12  establish disability the claimant bears the burden of showing she (1) is not working; and
13  (2) has a severe physical or mental impairment; and (3) the impairment meets or equals the
14  requirements of a listed impairment; or (4) claimant's RFC precludes her from performing
15  her past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the
16  Commissioner to show that the claimant has the RFC to perform other work that exists in
17  substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th
18  Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not
19  disabled" at any point in the five-step process, he does not proceed to the next step. 20
20  C.F.R. § 404.1520(a)(4).

21      "The ALJ is responsible for determining credibility, resolving conflicts in medical
22  testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
23  Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings
24  of the Commissioner are meant to be conclusive if supported by substantial evidence. 42
25  U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a
26  preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v.*
27  *Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to
28  deny benefits only "when the ALJ's findings are based on legal error or are not supported

by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Lybarger alleges the ALJ committed three errors: (1) he failed to provide clear and convincing reasons for rejecting Lybarger's symptom testimony; (2) he erred in rejecting the opinion of counselor Susan Guinn-Lahm; and (3) he failed to account for the cyclical nature of her mental health conditions in formulating the RFC. Lybarger clarified that she is focusing solely on her mental health conditions in this appeal (Doc. 18 at 3); therefore, the Court does not examine the ALJ's findings regarding her somatic impairments.

**Symptom Testimony**

Lybarger argues the ALJ failed to provide clear and convincing reasons to reject her testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 16-3p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must

engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Lybarger had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 19.) Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). Here, the ALJ did not make a finding of malingering. Therefore, to support his discounting of Lybarger's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

<u>Lybarger's Symptom Testimony</u>

In a September 14, 2016 function report, Lybarger reported daily nightmares and insomnia that left her exhausted, dysfunctional, and impaired in all categories. (AR 197-98, 202.) She stated that her disrupted sleep particularly impaired her concentration, memory, understanding, and coordination. (AR 197-98, 202.) She could follow written instructions, if she reviewed them frequently, but was unable to remember verbal directions. (AR 202.) Due to anxiety and social fears, she experienced paranoia, blurred vision, lack of concentration, and an inability to sustain social interactions. (*Id.*) During the day, she tried to clean, prepare food, care for her cat (a responsibility shared with her partner), and play games. (AR 198.) She completed her own personal care but not always on a daily basis. (AR 199.) Her partner provided reminders for self-care and medication. (*Id.*) She prepared meals and snacks, with her partner, but it could be drawn-out if she became distracted or forgetful. (*Id.*) With reminders from her partner, Lybarger would

sweep, mop, and fold laundry. (AR 200.) She reported the ability to drive, but rarely went out alone, and some weeks did not leave the house due to anxiety. (AR 200.) Lybarger went to the grocery store monthly, with her partner and at off hours to avoid crowds. She spent time painting and writing but not frequently. (AR 201.) Lybarger attended weekly counseling or meetings and would share a meal with others at her house monthly. (AR 201.) She reported that she could walk only 2-3 blocks before needing at least a 10-minute break. (AR 202.) She tried to be polite and would leave situations that were stressful or potentially confrontational. (AR 203.) She had lost jobs due to an inability to get along with others. (*Id.*)

At the July 2018 hearing, Lybarger testified to sleeping 3 to 4 hours on an average night, and 5 hours on a good night; nightmares woke her 4 to 5 times a night. (AR 38-39, 49.) During the day she had little energy and felt fatigued, which impaired her ability to function, and she would stare into space. (AR 40, 49.) Lybarger testified to getting angry when interacting with her mother or unable to do simple things, which might lead to her breaking objects. (AR 40-41.) She tried to avoid situations where she would need to interact with others and did not confront people. (AR 41.) When she did interact, she could feel angry or frustrated but had learned to calm herself and made progress with therapy. (AR 41-42.) In 2017, she was hospitalized with suicidal thoughts. (AR 42-43.) She testified to experiencing a few severe migraines per month, most of which resolved quickly with medication, but episodic severe ones would take her down for a couple days. (AR 44.) Lybarger reported having two to four good days a week, when she could help cook or do household chores; she reported two or three really bad days per month when she was non-functional. (AR 44-45.) She stated that she had a sciatic nerve issue that had progressively worsened since her twenties. (AR 45-46.) She testified to walking two miles every two to three days, stopping for three five-to seven-minute breaks during the walk. (AR 47.) The walk lasted about an hour-and-a-half, after which she rested for a couple hours. (AR 48.) She could drive, read, and research on the internet. (AR 48, 51-52.) The ALJ gave partial weight to Lybarger's symptom testimony. (AR 19-21.)

1

<u>Insomnia Symptoms</u>[1]

2

With respect to Lybarger's testimony regarding insomnia and related difficulties in

3

concentration, falling and staying asleep, irritability, poor memory, and fatigue, the ALJ

4

noted that Lybarger informed psychologist Beverly Yoches that she did not awaken in the

5

night and felt rested in the morning. (AR 20.) Further, medical records document her as

6

alert and oriented. (*Id.* (*citing* 1F-6F).) The ALJ stated that he addressed her insomnia with

7

a limitation to unskilled work. (*Id.*)

8

Psychologist Beverly Yoches documented the following information from

9

Lybarger: "sleeps 4-5 hours per night. She does not awaken during the night. She asserted

10

nightmares. She feels rested in the morning. She does not nap during the day." (AR 320.)

11

In the same interview, however, Dr. Yoches noted that Lybarger reported concentration

12

and memory problems due to insomnia, she had nightmares and sleep problems, and she

13

was really tired that morning. (AR 321.) The record shows that, over three years, Lybarger

14

consistently reported insomnia to her treating providers, including frequent awakenings

15

during the night and daytime fatigue, and received treatment and medication for this

16

impairment. (AR 354, 373, 393, 415, 441, 749, 784, 1164, 1355, 1411, 1891, 1906, 1939,

17

2006, 2010.) Therefore, the ALJ erred in relying on this one statement, which was

18

inconsistent with other statements in the same report and the balance of the record.[2]

19

The ALJ also found that the symptoms Lybarger reported as arising from insomnia

20

were inconsistent (at least in part) with the objective medical evidence. Symptom testimony

21

factors into the ALJ's decision only when the claimant's stated symptoms are not

22

substantiated by the objective medical evidence. SSR 16-3p. Thus, it is error for an ALJ to

23

discount credibility solely because a claimant's symptoms are not substantiated by the

24

_____

25

[1] The Court discusses Lybarger's insomnia separately from her mental health

26

impairments because the ALJ did so but recognizes that Lybarger attributes her sleep disturbances to PTSD. There is overlap between the symptoms caused by PTSD and

27

insomnia (itself a PTSD symptom), and neither Lybarger nor the Court assign symptoms solely to one impairment or another.

28

[2] Defendant did not endorse or even address the ALJ's reliance on Dr. Yoches's report as a reason to discount Lybarger's insomnia symptoms.

1    medical evidence. *Id.*; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). As this

2    was the only remaining basis for the ALJ's rejection of Lybarger's insomnia symptom

3    testimony, it was insufficient to sustain it. Additionally, the ALJ cited as inconsistent only

4    findings that Lybarger was alert and oriented. There is no question she was oriented and

5    conscious during her appointments, but Lybarger's ability to meet that minimal baseline

6    does not significantly contradict her consistent longitudinal reporting of symptoms

7    stemming from insomnia.

8            <u>Mental Health Symptoms</u>

9            With respect to Lybarger's mental health symptoms, the ALJ acknowledged that

10   records document anger problems, outbursts, and suicidal ideation. (AR 21.) However, the

11   ALJ discounted the testimony based on Lybarger's progress in therapy, including a

12   reduction in the frequency and severity of the outbursts and improved self-care skills. (*Id.*

13   (*citing* Ex. 26F/21-23).) The ALJ cited an April 11, 2018 therapy record, which indicated

14   that Lybarger had made progress and refined her self-care skills to reduce outbursts,

15   although they continued to occur every 2-4 weeks. (AR 1927, 1930.)

16           Overall, the records document that Lybarger progressed in treatment and her

17   symptoms improved over time. However, improvement while in active treatment and with

18   limited stressors, does not translate necessarily to a conclusion that she could function

19   effectively in a workplace. *See Garrison*, 759 F.3d at 1017-18. She was still exhibiting one

20   to two outbursts per month. Additionally, the day before the appointment cited by the ALJ,

21   Lybarger reported to her prescribing physician assistant that she could not concentrate, was

22   highly irritable, slept only 1-2 hours per night, and was having terrible nightmares. (AR

23   1930.) Further, the ALJ did not mention or address Lybarger's testimony that anxiety

24   sometimes prevented her from leaving the house, she rarely went out alone, and she

25   required reminders to begin or complete tasks. Looking at the whole of the mental health

26   record, the ALJ's finding of improvement as to Lybarger's angry outbursts was not a clear

27   and convincing reason to discount the entirety of her mental health symptom testimony.

28   The ALJ also found Lybarger's symptom testimony related to her mental health diagnosis

1    inconsistent with the objective medical evidence. Standing alone, that is an insufficient

2    basis to reject symptom testimony. *See* SSR 16-3p; *Light*, 119 F.3d at 792.

3         Activities of Daily Living

4         The ALJ also discounted Lybarger's symptom testimony based on his finding that

5    she was independent in activities of daily living, including driving, walking, personal

6    hygiene, shopping one or two times per week, and "all" household chores. (AR 21 (*citing*

7    AR 32-59, 321).) If a claimant's activities contradict her testimony, or the claimant spends

8    a substantial portion of her day at activities that involve skills transferable to a work setting,

9    those circumstances can form the basis for an adverse credibility determination. *See Orn*

10   *v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that Lybarger's activities

11   of daily living were not consistent with her allegations of complete disability.

12        The ALJ accurately noted that Lybarger could drive, although she indicated she

13   rarely went out of her house alone. (AR 51-52, 200.) She left the house only for walks,

14   mental health or medical appointments, and monthly grocery shopping. (AR 201.) The

15   ALJ's finding that Lybarger grocery shopped 1 to 2 times per week is not substantiated by

16   the record; it may have been based on Dr. Yoches's notation that Lybarger typically left

17   the house 1 or 2 times each week in total. (AR 321.) Lybarger reported that some weeks

18   she did not leave the house due to anxiety, and she experienced two or three non-functional

19   days per month. (AR 44-45, 200.) Although independent with personal hygiene, Lybarger

20   indicated she did not complete personal care daily and needed reminders about it. (AR

21   199.) Similarly, although Lybarger was capable physically of all household chores, she

22   shared them with her partner and needed reminders to do them. (AR 200, 321.)

23        Lybarger's two statements about her activities of daily living were generally

24   consistent with one another. One deviation noted by the ALJ was that, in the September

25   2016 function report, Lybarger indicated she could walk only 2-3 blocks before needing to

26   rest at least 10 minutes. (AR 202.) In contrast, in her hearing testimony, she stated she was

27   walking two miles every few days. (AR 47.) During those walks she would take three

28   breaks for five or more minutes (*Id.*) The hearing testimony, however, occurred almost two

years after the function report. Lybarger explained the contrast by testifying that she began walking in response to a diabetes diagnosis. (AR 46-47.) The diabetes diagnosis occurred in 2017. (AR 580, 1411.) When considering whether regular walks are inconsistent with disability, it is noteworthy that Lybarger testified her two-mile walk took 1.5 hours followed by a few hours of rest. (AR 48.) Overall, Lybarger's activities of daily living were not inconsistent with her testimony of disabling symptoms. "One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding driving, walking for exercise, and grocery shopping not incompatible with disability) (*quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Medication

Finally, the ALJ stated that Lybarger experienced no medication side effects. (AR 21.) The absence of medication side effects has no bearing on the severity of a person's symptoms for which they are taking the medication. In his response brief, Defendant discussed a different issue – the efficacy of Lybarger's medication at reducing her symptoms. (Doc. 22 at 7-8.) Because the ALJ did not rely upon this as a basis for discounting Lybarger's symptom testimony, the Court cannot uphold his ruling on that basis. *See Orn*, 495 F.3d at 630.

Conclusion

The Court finds the ALJ failed to provide clear and convincing reasons to reject Lybarger's symptom testimony related to her mental health issues and insomnia. The ALJ's erroneous discounting of Lybarger's symptom testimony warrants a remand to the ALJ for further consideration.

**Opinion of Licensed Professional Counselor Susan Guinn-Lahm**

Lybarger argues the ALJ erred in discounting the opinion of her treating therapist Susan Guinn-Lahm. Guinn-Lahm opined, on September 14, 2016, that Lybarger was unable to work due to her PTSD, insomnia, and chronic fatigue. (AR 317.) She further stated that Lybarger's conditions "seriously impair her stress tolerance and ability to maintain a consistent daily activity schedule. Therefore, Ms. Lybarger is unable to meet

the demands of any job setting." (*Id.*) Because Guinn-Lahm is not a psychologist, she is not considered an acceptable medical source. 20 C.F.R. § 404.1502. Thus, to discount her opinion, the ALJ was required to provide germane reasons. *See Roy v. Colvin*, 656 F. App'x 816, 818 (9th Cir. 2016) (requiring germane reasons to reject opinion of therapist).

First, the ALJ discounted Guinn-Lahm's statement on the ultimate issue of disability because that is an issue reserved to the Commissioner. (AR 23.) Lybarger does not contest this portion of the ALJ's finding, and it was a germane reason to reject that portion of the opinion. *See* 20 C.F.R. § 404.1527(d)(1) & (3). Second, the ALJ gave the opinion – that Lybarger's conditions impaired her stress tolerance and ability to sustain a consistent daily schedule – little weight because he found it inconsistent with the record evidence documenting normal behavior, moods, memory, judgment, insight, thought processes and content, and concentration, as well as Lybarger's average intelligence. (AR 22-23 (*citing* 1F/7, 10; 4F/4; 5F/17; 6F; 8F-13F; 17F-25F; 27F/4; 28F; 29F/15.) Those mental status exams capture only a portion of Lybarger's functionality and do not account for evidence that she acted out under stress and experienced days when she felt unable to leave the house. It is not self-evident that when a claimant demonstrates normal behavior, judgment, and concentration during medical appointments, she necessarily has both the stress tolerance and ability to sustain a daily schedule required for full-time employment. Because there is not a clear inconsistency between the therapist's opinion and the record evidence upon which the ALJ relied, he should reconsider this opinion on remand.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). Here, Lybarger seeks solely a remand for further consideration. The Court finds that is the proper remedy. The Court does not reach Lybarger's third issue that challenged the RFC found by the ALJ.

1   The ALJ necessarily will have to reconsider the RFC, and the two issues reviewed above
2   provide a sufficient basis for remand.[3]

3         Although the ALJ accurately noted that Lybarger improved through treatment,
4   further analysis is required to determine whether that translates to an ability to work. Dr.
5   Yoches reviewed no records prior to offering her opinion on Lybarger's limitations. (AR
6   319.) Similarly, the agency reviewing psychologists (who found no severe impairments)
7   saw few mental health records before offering their opinion. (AR 60-72-89.) Therefore, no
8   medical source familiar with Lybarger's mental health records offered an opinion on her
9   functional limitations. *See Garrison*, 759 F.3d at 1017-18 (cautioning against finding that
10  mental health improvement demonstrates an ability to sustain employment when no
11  medical source familiar with her records offered such an opinion). Upon remand, the ALJ
12  should obtain such an opinion from a treating or consulting source. Additionally, in a
13  March 2018 appointment with Dr. Kumar (a neurologist), Lybarger scored only 25/30 on
14  the MMSE and 14 on the Epworth Sleepiness Scale, which indicates mild to moderate
15  symptoms of daytime sleepiness. (AR 2005, 2010.) Dr. Kumar referred Lybarger for
16  further tests related to memory impairment and a sleep study. (AR 2010.) Therefore,
17  additional records relevant to her insomnia and memory impairment should be reviewed.

18        Accordingly,

19        **IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and
20  further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court
21  should enter judgment and close this case.

22        Dated this 29th day of March, 2021.

23

24

25  _Lynnette C. Kimmins_

26  Honorable Lynnette C. Kimmins
      United States Magistrate Judge

27

28      [3] The Court notes that Defendant did not directly respond to this third argument in his responsive brief. (*See* Doc. 22.)

- 11 -